## Case No. 12,686.

SEYMOUR et al. v. GREGORY et al.

[10 Biss. 13.] [1]

Circuit Court, N. D. Illinois. Oct., 1867.

APPEALS—SUPERSEDEAS BOND—PERFORMANCE OF CONDITION—REMITTITUR—CHANGING JUDGMENT—RELEASE OF SURETIES.

The condition of a supersedeas bond was that the defendant (plaintiff in error) should prosecute its writ of error to effect, and answer all damages and costs if it failed to make good its plea. The judgment in the court below was for $119,061.46.—$107,353.44 being on a general verdict of the jury, and $11,708 being on a special verdict. The supreme court reversed the judgment and remanded the cause, ordering the special verdict to be set aside. The su-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

preme court also ordered that, if the plaintiffs would file a remittitur of the amount of the special verdict in the circuit court, and a certified copy thereof in the supreme court, the judgment of reversal would be set aside, and a judgment of affirmance entered in its stead. This was accordingly done. In a suit against the sureties on the supersedeas bond, held, that the condition of the bond had been complied with, and that the sureties were released from all liability.

On July 19, 1873, judgment was recovered by the plaintiffs in this action against the Phillips & Colby Construction Company, in the circuit court of the Northern district of Illinois for $119,061.46 damages, and $130.92 costs. The case was tried by a jury, who found a general verdict of $107,353.44, and a special verdict, for extra cost of certain work, of $11,708, which the jury said should be added to the general verdict; and the court rendered judgment both on the general and special verdicts for the entire amount. [Case unreported.] On July 28, 1873, the Phillips & Colby Construction Company sued out a writ of error to the supreme court of the United States, and executed a supersedeas bond, whereby the present defendants became sureties that the Phillips & Colby Construction Company "shall prosecute its said writ of error to effect, and answer all damages and costs if it shall fail to make good its plea." The supreme court, on December 13, 1875, reversed the plaintiffs' judgment with costs, and declared that the cause "is hereby remanded to the said circuit court, with directions to set aside the special verdict of the jury for $11,708, and to enter a judgment on the general verdict for $107,-353.44, with interest from the 19th day of July, 1873, until paid, at the same rate per annum that similar judgments bear in the courts of the state of Illinois." [91 U. S. 646.] On the same day the supreme court also declared: "And it is further ordered that, if the defendants in error shall, within a reasonable time, during the present term of this court, file in the circuit court a remittitur of so much of the judgment of that court in their favor as is based on the special verdict, and produce here a certified copy of the remittitur, then the judgment of reversal here rendered will be set aside, and a judgment of affirmance entered in its stead; the defendants in error to pay costs in this court." On January 5, 1876, the plaintiffs, without notice to, and knowledge or consent of, the defendants, filed in the circuit court of the Northern district of Illinois their remittitur, which stated that they did thereby "remit from the judgment heretofore entered in this cause the sum of $11,708, and interest from the date of the entry of said judgment, * * * and they pray the court here to reduce the said judgment to the sum of $107,353.44, * * * and that said reduction may be made now as of and for the day of the date of the entry of such judgment." The circuit court, upon filing of this remittitur, granted the plaintiffs' request, and "ordered that leave be, and the same is hereby, given

to the said plaintiffs to remit the said sum of $11,708, * * * that the judgment herein be reduced to the sum of $107,353.44, * * * and that such reduction be made now as of the date of the entry of said judgment."

This order of the circuit court was then certified to the supreme court, which, on January 11, 1876, entered upon its record the following order in the writ of error: "This case came on to be heard on the transcript of the record from the circuit court of the United States for the Northern district of Illinois, and was argued by counsel. On consideration whereof, it appearing to this court that the judgment of the said circuit court is for a larger sum than should have been entered, and the said defendants in error having filed here, in open court, a certified copy of a remittitur in the following words, namely [quoting it], and also a certified order of said circuit court, entered thereon, as follows, namely [quoting it], whereupon it is considered, ordered, and adjudged by this court that the judgment of the said circuit court in this case be, and the same is hereby, affirmed, deducting from the said judgment of said circuit court the amount so remitted as aforesaid, with interest until paid, at the same rate per annum that similar judgments bear in the courts of the state of Illinois, the defendants in error to pay costs in this court, and that the said defendants recover against the said plaintiffs, Mark T. Seymour et al., $20 for its costs herein expended, and have execution thereof." The plaintiffs paid the clerk's costs in the supreme court on the writ of error, and the defendant company had execution for the attorneys' costs against the plaintiffs. The plaintiffs [Mark T. Seymour and others], on February 25, 1876, brought this action to recover from the defendants [Charles A. Gregory and others], as sureties in the supersedeas bond, the amount of the reduced judgment, being the residue of the original judgment of July 19, 1873, after it had been diminished by the remittitur filed January 5, 1876. The defendants pleaded in abatement to the jurisdiction of the court, but the plea was overruled, and is reported in [Case No. 12,689].

Sleeper & Whiton, for plaintiffs.

Edwin H. Abbot and L. S. Dixon, for defendants.

DRUMMOND, Circuit Judge (charging jury). The breach on the bond alleged in the declaration is that the company did not prosecute its writ of error to effect, and had not answered to the obligees all or any part of the damages and costs, by reason of the failure to make good its plea. And the declaration then sets forth the affirmance of the judgment by the supreme court on the 11th of January, 1876, the remanding of the cause, the issue of an execution from the circuit court against the company, the return of nulla bona, and avers that the company has no property in Illinois subject to execution, and that no part of the judgment has been paid. On the facts of the case, which are all either in writing or of record, and about which there seems to be no controversy, the questions are, whether the plaintiffs have established (1) that the company failed to prosecute its writ of error to effect; or (2) that the company failed to make good its plea.

It is not seriously insisted, as I understand, by the plaintiffs' counsel, that the company did not prosecute its writ of error to effect, but it is claimed that it failed to make good its plea. The writ of error was regularly sued out and prosecuted, the record filed in due time, errors assigned, and everything done, in the prosecution of the writ by the company, which the law or the rules of the court required; and the result proved that the writ of error had been effectual, because the judgment on which the writ of error was sued out did not stand.

The answer to the other question depends on what was meant by its plea and was its plea made good? The bond recites that the company had prosecuted a writ of error to reverse the judgment. The writ declares that it is issued because, in the proceedings and record, and in the rendition of the judgment, a manifest error had happened; and declares further that the record is to be taken to the supreme court to be inspected, and that the court "may cause further to be done therein to correct that error which of right and according to law and custom of the United States should be done." The plea is that manifest error had occurred in the record and judgment. The supreme court found that was true, and reversed the judgment, but promised, if the defendants in error would perform certain acts and furnish evidence of the same to the supreme court, it would affirm the judgment; and when the remittitur was made and proved to the supreme court that court did affirm the judgment. But what judgment? Not the original judgment on which the writ of error issued, but one purged of error, as found by the supreme court.

The question then is, whether within the meaning of the condition in the bond, as against the sureties, the company had failed to make its plea good, because, under the power conferred on the supreme court, it had directed the judgment of this court to be changed, and then affirmed it as changed. I think not. It seems to me that, under the facts of the case, the company did prosecute the writ of error to effect, and did make its plea good, and, as at present advised, I so instruct the jury.

Verdict and judgment for defendants.

NOTE. A motion for new trial was denied by the court, and plaintiffs carried the case by writ of error to the supreme court of the United

States, in which, subsequently, the judgment of the court below was affirmed by consent. [Case unreported.]